UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| ALLSTATE TEXAS LLOYD, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL NO. M-08-76 |
| | § | |
| STEWART LANTZ, *et al*, | § | |
| | § | |
| Defendants. | § | |

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT,
DENYING DEFENDANT PASCUAL'S MOTION TO DISMISS, AND
GRANTING DEFENDANT LANTZ'S MOTION FOR LEAVE
TO FILE COUNTERCLAIM**

**I.   Introduction**

Now before the Court for consideration are Plaintiff Allstate Texas Lloyds' Motion for Summary Judgment (Doc. 15), Defendant Florian Pascual's Motion to Dismiss (Doc. 20), and Defendant Stewart Lantz's Motion for Leave to File Counterclaim (Doc. 31).[1] This is an action for declaratory relief brought pursuant to 28 U.S.C. § 2201, et seq., in which Plaintiff Allstate seeks a declaration of its rights and obligations under an insurance policy issued to Defendant Lantz. (Doc. 23). It is undisputed that Plaintiff issued a Texas Homeowners Policy, policy number 936883045 ("the Allstate Policy"), to Lantz for the period of June 25, 2004 to June 25, 2005. (Doc. 23; Doc. 15, Ex. A). Sometime thereafter, Defendant Pascual filed suit against Lantz in the 389th Judicial District Court, Hidalgo County, Texas, under the cause number C-

---

[1] On June 4, 2008, Defendant Lantz filed a Motion for Additional Time to File Supplemental Responses, Supplemental Summary Judgment Evidence, and Briefing in Response to Plaintiff's Motion for Summary Judgment. (Doc. 27). At the initial pretrial conference on June 5, 2008, the Court advised the parties that it would consider any supplemental briefing filed prior to the issuance of the Court's summary judgment ruling. Subsequent to the hearing, only Plaintiff filed any additional summary judgment briefing. (Doc. 30). Several months have passed since the hearing. Therefore, Lantz's Motion for Additional Time is now moot.

2670-05-H ("the underlying lawsuit"). (Doc. 23; Doc. 26, Ex. A).[2] Pascual also named Sight's My Line, Inc., a/k/a Eyear Optical, and Primary Care Ophthalmology, Inc. as defendants. *Id.* Allegedly, Lantz is a director and officer of both corporations and Pascual was an employee of one or both until her termination on or about July 24, 2004. *Id.* In Pascual's Second Amended Original Petition, the live petition in the underlying lawsuit, Pascual alleges claims against Lantz for assault, sexual harassment, intentional infliction of emotional distress, and slander. *Id.* Pascual alleges the latter three claims against the corporate defendants under the theory of respondeat superior. *Id.* In addition, Pascual alleges a claim for negligent supervision against the corporate defendants. *Id.* Pascual's causes of action are premised on her factual allegations that Lantz subjected her to inappropriate queries regarding her sexual activities, inappropriate touching, and requests for sexual favors from on or about January 12, 2003 to on or about July 24, 2004, when she was fired after complaining about Lantz's conduct. *Id.* Pascual's slander claim is more specifically based on her allegation that the defendants "made a false statement of fact referring to [Pascual] which imputed sexual misconduct against [her]." *Id.*

Upon being sued, Lantz requested a defense and indemnity from Plaintiff under the Allstate Policy. (Doc. 23). Through its complaint and summary judgment motion, Plaintiff seeks a judicial determination that it has no obligation to defend or indemnify Lantz under the Allstate Policy for the claims made against him by Pascual in the underlying lawsuit. (Docs. 15, 23). Pascual, in turn, asks that she be dismissed from the

---

[2] The copy of Pascual's live petition in the underlying lawsuit as submitted by Plaintiff is incomplete, in that it omits portions of Pascual's assault and slander allegations. (Doc. 15, Ex. B). Therefore, the Court will cite and refer to the copy of the petition attached as an exhibit to Lantz's summary judgment response. (Doc. 26, Ex. A).

present action because Plaintiff has no justiciable claim against her. (Doc. 20). Finally, Lantz requests leave to assert counterclaims for breach of contract and violations of § 21.21 of the Texas Insurance Code, among others, against Plaintiff. (Doc. 31).

## II.     Plaintiff's Motion for Summary Judgment

### A.     Overview of Applicable Law

Plaintiff seeks summary judgment on its request for a declaration from this Court that it has no duty to defend or indemnify Lantz as a matter of law. (Doc. 15). A district court will grant summary judgment when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). A party moving for summary judgment has "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-movant to produce evidence or designate specific facts showing the existence of a genuine issue. *Allen v. Rapides Parish Sch. Bd.*, 204 F.3d 619, 621 (5th Cir. 2000).

The Federal Declaratory Judgment Act, 28 U.S.C. § 2201, et seq., provides that "[i]n a case of actual controversy within its jurisdiction…, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). Courts have consistently approved of the use of § 2201 to declare the rights and obligations of parties to an insurance policy. *Aetna Life Ins. Co.*

*of Hartford, Conn. V. Haworth*, 300 U.S. 227, 242-44 (1937); *Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523 (5th Cir. 2004); *Centennial Ins. Co. v. Ryder Truck Rental, Inc.*, 149 F.3d 378 (5th Cir. 1998).  Here, where diversity of citizenship forms the basis for the Court's jurisdiction over the action, the Court must apply the substantive law of Texas in determining the rights and obligations of the parties to the Allstate Policy. *Northfield*, 363 F.3d at 527-28.

It is well-settled that Texas courts "interpret insurance policies in Texas according to the rules of contract interpretation." *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003).  The "primary concern when interpreting a contract is to ascertain and give effect to the intent of the parties as that intent is expressed in the contract." *Seagull Energy E&P, Inc. v. Eland Energy, Inc.*, 207 S.W.3d 342, 345 (Tex. 2006).  To discern intent, the court must consider the entire contract in an effort to harmonize and give effect to all of its provisions so that none will be rendered meaningless. *Id.*  If, after the pertinent rules of construction are applied, the contract can be given a definite or certain legal meaning, it is unambiguous and is construed as a matter of law. *Frost Nat'l Bank v. L&F Distributors, Ltd.*, 165 S.W.3d 310, 312 (Tex. 2005).  If, however, the contract is subject to more than one reasonable interpretation, it is ambiguous. *Id.*  The language of an ambiguous insurance policy is construed in the manner that most favors coverage. *Progressive County Mut. Ins. Co. v. Sink*, 107 S.W.3d 547, 551 (Tex. 2003).

Under Texas law, the duty to defend and the duty to indemnify are distinct and separate and must be addressed independently. *King v. Dallas Fire Ins. Co.*, 85 S.W.3d 185, 187 (Tex. 2002); *Farmers Tex. County Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 82 (Tex. 1997).  As discussed more fully *infra*, courts determine whether a duty to defend

exists by referring to the "eight corners" of the pleadings and the insurance policy. *Id.* In contrast, the actual facts establishing liability in the underlying suit determine the existence of the duty to indemnify. *Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 821 (Tex. 1997). While an insurer's duty to indemnify can be negated for the same reasons its duty to defend is negated, the duty to defend must be resolved first. *See Griffin*, 955 S.W.2d at 84.

**B.   Pascual's Claims for Assault, Sexual Harassment, Intentional Infliction of Emotional Distress, and Negligent Supervision**

In moving for summary judgment, Plaintiff relies on Pascual's live petition in the underlying lawsuit and the Allstate Policy itself to support its claim that Plaintiff has no duty to defend or indemnify Lantz as a matter of law. (Doc. 15). In response, Lantz appears to concede that he is *not* entitled to a defense or indemnity with regard to Pascual's claims for assault, sexual harassment, intentional infliction of emotional distress, and negligent supervision. (Doc. 26). In addition, the Court's review of the petition, policy, and the governing law supports this concession. Briefly, these claims have not been "brought against an **insured** for damages because of **bodily injury**…caused by an **occurrence**," and thus do not fall within the scope of potential coverage afforded under the Allstate Policy. (Doc. 15, Ex. A at p. 13)(emphasis in original). First, the corporate defendants are not "insureds" as that term is defined by the Allstate Policy. *Id.* at p. 2. Therefore, no coverage exists for Pascual's negligent supervision claim and other claims against the corporate defendants. In addition, it is clear that at least one of Pascual's causes of action against Lantz—that is, her claim for intentional infliction of emotional distress—does not constitute a claim for "bodily injury" under the meaning of the Allstate Policy. *See Cowan*, 945 S.W.2d at 822-26;

(Doc. 15, Ex. A at p. 2; Doc. 26, Ex. A). Even if it did, the Allstate Policy defines "occurrence" as "an accident, including exposure to conditions, which results in 'bodily injury….'" (Doc. 15, Ex. A at p. 3). Under Texas law, "an intentional tort is not an accident and thus not an occurrence regardless of whether the effect was unintended or unexpected." *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 8 (Tex. 2007). In addition, "a claim does not involve an accident or occurrence when either direct allegations purport that the insured intended the injury (which is presumed in cases of intentional tort) or circumstances confirm that the resulting damage was the natural and expected result of the insured's actions, that is, was highly probable whether the insured was negligent or not." *Id.* at 9. Here, it appears beyond dispute that Pascual's assault, sexual harassment, and intentional infliction of emotional distress claims against Lantz involve conduct of which the alleged injury was the intended or natural and expected result. (Doc. 26, Ex. A).[3]

### C. Pascual's Slander Claim

The Court now turns to the issue raised in Plaintiff's summary judgment motion on which the parties specifically disagree—that is, whether the Allstate Policy affords a defense or indemnity to Lantz for Pascual's slander claim against him. (Doc. 26). With respect to this claim, the petition alleges as follows:

**SLANDER BY DEFENDANTS**

25. [Lantz and the corporate defendants] orally made a false statement of fact referring to [Pascual] which imputed sexual misconduct against [her]. This was done without regard to the truth or falsity of the statement. [Pascual] suffered damages for which [she] herein sues.

---

[3] The Court has no need, therefore, to consider Plaintiff's alternate arguments in support of its position that it has no duty to defend or indemnify Lantz with respect to Pascual's claims for assault, sexual harassment, intentional infliction of emotional distress, and negligent supervision. (Doc. 15).

(Doc. 26, Ex. A). Plaintiff recognizes that the Allstate Policy includes "Endorsement No. HO-201," in which the definition of "bodily injury" is amended to include "personal injury." (Doc. 15, Ex. A at Endorsement No. HO-201). The endorsement defines "personal injury" as injury arising out of "libel, slander, or defamation of character," among other offenses. *Id.* Plaintiff nonetheless argues, and Lantz submits evidence to dispute, that the Allstate Policy does not afford coverage because Pascual fails to allege that the conduct giving rise to her slander claim occurred during the policy period. (Docs. 15, 26, 30). The Court's consideration of this argument is governed by the "eight corners" analysis, under which "an insurer's duty to defend is determined by the third-party plaintiff's pleadings, considered in light of the policy provisions, without regard to the truth or falsity of those allegations." *GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church*, 197 S.W.3d 305, 308 (Tex. 2006). Under this analysis, any doubt regarding the duty to defend is resolved in favor of the insured, and the pleadings are liberally construed. *Id.*; *King*, 85 S.W.3d at 187; *Nat'l Union Fire Ins. Co. v. Merchs. Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997). More specifically, "'[w]here the complaint does not state facts sufficient to clearly bring the case within or without the coverage, the general rule is that the insurer is obligated to defend if there is, potentially, a case under the complaint within the coverage of the policy." *Id.* (quoting *Heyden Newport Chem. Corp. v. S. Gen. Ins. Co.*, 387 S.W.3d 22, 26 (Tex. 1965)). In *GuideOne*, the Texas Supreme Court recognized that other courts had approved of the use of extrinsic evidence outside the eight corners of the pleadings and policy only where such evidence is relevant to an "independent and discrete coverage issue" and does not touch on the merits of the third party claim. *GuideOne*, 197 S.W.3d at 308-09. However, the

court did not explicitly adopt this "very narrow" exception to the eight corners rule. *See id*. at 308-11.

Pascual generally alleges that the conduct giving rise to all of her claims occurred from on or about January 12, 2003 to on or about July 24, 2004, and thus partially within the policy period. (Doc. 15, Ex. A; Doc. 26, Ex. A). Therefore, even assuming that the Court cannot consider the evidence submitted by Lantz to show that the pertinent facts occurred during this period, Pascual's allegations are sufficient to bring this claim, potentially, within the coverage of the policy. In so finding, the Court is not "imagin[ing] factual scenarios that might trigger coverage." *See Nat'l Union Fire*, 939 S.W.2d at 142. Rather, Pascual herself alleges that the acts giving rise to her claims occurred during a period of time that overlaps with the period of coverage.

As it does with respect to certain of Pascual's additional claims, Plaintiff further argues that Pascual's slander claim does not involve an "occurrence" because it is an intentional tort. (Doc. 15). In addressing this argument, the Court first notes that it "must give effect to all contractual provisions so that none will be rendered meaningless." *Schaefer*, 124 S.W.3d at 157. In addition, Plaintiff itself recognizes that

> [e]ndorsements to a policy generally supersede and control over conflicting printed terms within the main policy. *Mutual Life Ins. Co. v. Daddy$ Money, Inc.*, 646 S.W.2d 255, 259 (Tex.App.-Dallas 1982, writ ref'd n.r.e.). Often, endorsements are issued to add coverages that would otherwise be excluded. Yet, an endorsement cannot be read apart from the main policy, and the added provisions will only supersede the previous policy terms to the extent they are truly in conflict. *See Westchester Fire Ins. v. Heddington Ins. Ltd.*, 883 F.Supp.158, 165 (S.D.Tex. 1995), *aff'd*, 84 F.3d 432 (5th Cir. 1996). The policy and endorsement should be construed together unless they are so much in conflict that they cannot be reconciled. 4 HOLMES' APPLEMAN ON INSURANCE 2d, § 20.1 (1998).

*Mesa Operating Co. v. Cal. Union Ins. Co.*, 986 S.W.2d 749, 754 (Tex.App.-Dallas 1999, pet. denied); *see also TIG Ins. Co. v. San Antonio YMCA*, 172 S.W.3d 652, 658 (Tex.App.-San Antonio 2005, no pet.); *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 558 (5th Cir. 2004). Here, the endorsement expressly including injury arising out of slander within the definition of "bodily injury" directly conflicts with a reading of the term "occurrence" that excludes coverage of any claim arising from slander. Faced with this conflict, the Court must resolve it in favor of coverage. For the same reason, the Court also finds that the "intentional injury" exclusion to which Plaintiff appeals is not applicable to the present case. (Doc. 15). That provision, found in the main policy, states that coverage does not apply to "bodily injury…which is caused intentionally by or at the direction of the insured." (Doc. 15, Ex. A at p. 14)(emphasis omitted). Again, the Court cannot read this exclusion in a manner that renders meaningless the endorsement's definition of injury arising from slander as "bodily injury."

      Plaintiff further contends that the "personal injury-employee" exclusion in the Endorsement No. HO-201 operates to bar coverage in the instant case. (Doc. 15). The exclusionary language to which Plaintiff refers provides that "[p]ersonal injury coverage does not apply to:…(3) injury caused by an insured and sustained by any person who is an employee of the insured at the time of the offense causing the injury." (Doc. 15, Ex. A at Endorsement No. HO-201)(emphasis omitted). As noted *supra*, the "insured" in this case is Lantz, not the corporate defendants that allegedly employed Pascual. (Doc. 26, Ex. A). Pascual's allegation that Lantz was a director and officer of both corporations

cannot be equated with an allegation that Lantz himself employed Pascual. *Id.* Therefore, the "personal injury-employee" exclusion does not apply.

Plaintiff appeals to one final exclusion as support for its claim that it has no duty to defend or indemnify Lantz. (Doc. 15). The "business pursuits" exclusion contained in the main policy provides that coverage does not apply to "bodily injury…arising out of or in connection with a business engaged in by an insured." (Doc. 15, Ex. A at p. 14).[4] The exclusion also contains an exception—that is, the exclusion "does not apply to activities which are ordinarily incidental to non-business pursuits." *Id.* The Allstate Policy defines "business" to "include[] trade, profession or occupation." *Id.* at p. 2.

In determining whether the above-cited policy language applies in the instant case, the Court must confine itself to the allegations in Pascual's petition. Again, the petition alleges that Lantz orally made a false statement of fact imputing sexual misconduct against Pascual. (Doc. 26, Ex. A). The petition contains no other factual allegations to support Pascual's slander claim specifically. However, the petition makes apparent that this claim bears a substantial relationship to Pascual's additional allegations of improper conduct by Lantz in the workplace. To this Court's knowledge, no Texas court has yet determined whether coverage for allegations of a slanderous remark made by an employee about another is excluded, or excepted from exclusion, by language the same or similar to that found in the Allstate Policy. However, courts have addressed the "business pursuits" exclusion and its exception in other contexts. The case law makes clear that Lantz's alleged shared employment with Pascual that extended at least from January 12, 2003 to July 24, 2004 constituted a "business pursuit" and that the conduct

---

[4] Unlike the "intentional injury" exclusion, the "business pursuits" exclusion does not directly conflict with the endorsement's inclusion of injury arising out of slander within the definition of "bodily injury."

giving rise to Pascual's slander claim arose out of or in connection with that employment. *Allstate Ins. Co. v. Hallman*, 159 S.W.3d 640, 644 (Tex. 2005)("business pursuit" itself defined as "continuous and regular" activity that involves "a profit motive, usually as a means of livelihood, gainful employment, earning a living…."); *Utica Nat'l Ins. Co. of Tex. v. Am. Indem. Co.*, 141 S.W.3d 198, 203 (Tex. 2004)(term "arise out of" in insurance policy is interpreted broadly and requires only "but for" causation, not direct or proximate causation); *Adamo v. State Farm Lloyds Co.*, 853 S.W.2d 673, 676-77 (Tex.App.-Houston [14th Dist.] 1993, writ denied)(no coverage under business pursuits exclusion where facts giving rise to plaintiff's causes of action arose out of professional relationship with insured); see also *Hodges v. Allstate Ins. Co.*, 1996 WL 33650193, at *2 (Tex.App.-Eastland Feb. 29, 1996)(business pursuits exclusion applied where alleged facts arose from "counselor/pastor" relationship between plaintiff and insured and such relationship was "the primary thrust of [the plaintiff's] pleading").

Given the above, and upon review of additional case law discussing the business pursuits exception, the Court cannot find that the facts giving rise to Pascual's slander claim point to conduct that is "ordinarily incidental to non-business pursuits." The Texas Supreme Court has addressed the applicability of the exception to the business pursuits exclusion on two occasions, both in the context of home-based child care.[5] *State Farm Fire & Cas. Co. v. Reed*, 873 S.W.2d 698 (Tex. 1993), arose out of a wrongful death lawsuit filed by the parents of a child who died while at a home child care center operated by the insured. The child drowned in a puddle of water that had settled on a tarp

---

[5] In both cases, the language of the exclusion and exception were the same, or substantially the same, as the language in the present case. *See State Farm Fire. & Cas. Co. v. Vaughan*, 968 S.W.2d 931, 932 (Tex. 1998); *State Farm Fire & Cas. Co. v. Reed*, 873 S.W.2d 698, 699 (Tex. 1993).

covering a swimming pool at the home after crawling through a hole in the fence that separated the play area and pool. *Reed*, 873 S.W.2d at 698. The court concluded that one reasonable interpretation of the business pursuits exclusion and exception in the insured's homeowner's insurance policy was that the maintenance of a fence at a person's home is ordinarily incident to a non-business pursuit. *Id.* at 701. Therefore, the court resolved the coverage dispute in favor of the insured. *Id.* In a later decision, *State Farm Fire & Cas. Co. v. Vaughan*, 968 S.W.2d 931, 934 (Tex. 1998), the court reached the opposite conclusion. In doing so, it rejected a reading of *Reed* that would render the exclusion and exception invariably ambiguous. *Vaughan*, 968 S.W.2d at 933-34. The court instead interpreted *Reed* to require a "focus on the actual activity creating liability" when determining the applicability of the policy language at issue. *Id.* at 934 (citing *Reed*, 873 S.W.3d at 701 n.7). In *Vaughan*, the insured's alleged negligence in the underlying lawsuit consisted of strapping a child into a car safety seat, placing him in the closet of her home, and then leaving the home while being paid to care for him there. *Id.* at 932, 934. The court concluded that these allegations focused specifically on "the way [the insured] conducted her business pursuit," and thus the exclusionary language applied. *Id.* at 934.

The Court has also located two Texas appellate court decisions that refer to the business pursuits exception. In *Hodges*, *supra*, the court refused to apply the exception where the plaintiff's allegations in the underlying suit concerned activities occurring within the context of the plaintiff's relationship with her pastor as counselor. *Hodges*, 1996 WL 33650193, at *3. In *Gilliland v. Employers Liab. Assurance Corp., Ltd.*, 417 S.W.2d 921 (Tex.App.-El Paso 1967), the court implicitly rejected the application of the

exception where the acts giving rise to the plaintiff's assault and battery claims occurred on the insured's business premises, during the usual business hours, and while the plaintiff was working. Upon review of the relevant case law, Pascual's petition, and the Allstate Policy, this Court must also reject any interpretation of the exception that would render the business pursuits exclusion inapplicable. Pascual's slander allegation, when viewed in the light of the entirety of the pleading, focuses on the way Lantz conducted his relationship with Pascual as an employee. Allegedly, he did so in part by making a statement that imputed sexual misconduct to Pascual. The petition indicates that the statement occurred in the context of Lantz's employment relationship with Pascual and, therefore, is the kind of act to which the business pursuits exclusion must apply. In so finding, the Court further notes that "the purpose of the business pursuits exclusion is to lower homeowners insurance premiums by removing coverage for activities that are not typically associated with the operation and maintenance of one's home." *Hallman*, 159 S.W.3d at 645. Clearly, alleged misconduct carried out in the context of a homeowner's workplace relationship bears no relation to the operation and maintenance of his home. For these reasons, the Court must find that Lantz is not entitled, as a matter of law, to a defense under the Allstate Policy. In addition, no facts can be developed in the underlying suit that would except slander carried out in the above-described context from the business pursuits exclusion. Therefore, the Court must also find that Plaintiff has no duty to indemnify Lantz under the policy. *See Griffin*, 955 S.W.2d at 84.[6]

---

[6] The Court has no need, therefore, to consider Plaintiff's alternate argument that the "known loss" or "loss-in-progress" doctrine precludes coverage. (Doc. 15).

### III.     Defendant Pascual's Motion to Dismiss

Subsequent to the filing of Plaintiff's Motion for Summary Judgment, Defendant Pascual requested that she be dismissed as a defendant in the case. (Doc. 20). In short, Pascual claims that no actual controversy exists between Plaintiff and Pascual by virtue of Pascual's potential future interest in Lantz's right to indemnity under the Allstate Policy. *Id.*[7] As Plaintiff correctly notes in its response to Pascual's Motion to Dismiss (Doc. 25), the purpose of the Federal Declaratory Judgment Act is to settle "actual controversies" before they ripen into violations of law or breach of some contractual duty. *Chevron U.S.A., Inc. v. Traillor Oil Co.*, 987 F.2d 1138, 1154 (5th Cir. 1993)(quoting *Hardware Mut. Cas. Co. v. Schantz*, 178 F.2d 779, 780 (5th Cir. 1949)); *see also* § 2201(a). The Act allows relief to be given by way of recognizing a plaintiff's right even though no immediate enforcement of it was asked. *Textron Lycoming Reciprocating Engine Div. v. United Auto., Aerospace, Agric. Implement Workers of Am., Int'l Union*, 523 U.S. 653, 660 n.3 (1998)(quoting *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671-72 (1950)). This Court's determination of the right to indemnity before judgment is rendered in the underlying lawsuit comports with these principles and with Texas law, *see Griffin*, 955 S.W.2d at 84. As a third party beneficiary of the Allstate Policy whose derivative right to recovery has been determined by the Court, Pascual is a properly named defendant to this action. *See State Farm County Mut. Ins. Co. v. Ollis*, 768 S.W.2d 722, 723 (Tex. 1969)(party injured by insured is third party beneficiary of liability insurance policy); *State Farm Fire & Cas. Co. v. Fullerton*, 118 F.3d 374, 385 (5th Cir. 1997)(under Texas law, third party plaintiffs seeking insurance funds were in privity with insured "because of the derivative nature of their recovery under the

---

[7] Pascual also opposed summary judgment on the same grounds. (Doc. 21).

policy"); *see also Nat'l Am. Ins. Co. v. Breaux*, 368 F.Supp.2d 604, 619-21 (E.D.Tex. 2005)(plaintiffs in suit against insured were proper parties to declaratory judgment action filed by insurer). Therefore, Pascual's request for relief must be denied.

### IV.  Defendant Lantz's Motion for Leave to File Counterclaim

Also subsequent to the filing of Plaintiff's summary judgment motion, Defendant Lantz moved for leave to file counterclaims against Plaintiff. (Doc. 31). Lantz's proposed counterclaims allege that upon his demand for a defense and indemnity under the Allstate Policy, Plaintiff issued a letter to Lantz stating that it would provide him with a defense in the underlying lawsuit under a "reservation of rights." (Doc. 31, Ex. 1). Plaintiff then hired an attorney, Marion Lawler, to represent Lantz in the lawsuit. *Id.* Lantz alleges that he and his personal attorney, William Kimball, were instructed to direct all communications to Plaintiff through Lawler. *Id.* According to Lantz, Lawler instructed Kimball to hire investigators, schedule depositions, and incur other defense costs under the premise that Allstate would reimburse Lantz or Kimball for these expenses. *Id.* However, Plaintiff refused to pay for the services after they had been rendered. *Id.* Based on these allegations, Lantz seeks to assert counterclaims for breach of contract and violations of § 21.21 of the Texas Insurance Code, among others. *Id.* Lantz claims that whether or not this Court determines that Lantz is entitled to coverage under the Allstate Policy, Plaintiff is nonetheless liable for the proposed counterclaims "because of [its] reservation of rights letter promising a defense in the state court suit and based upon [Plaintiff's] promises, through Mr. Lawler, that certain defense costs would be reimbursed or paid for directly by [Plaintiff]." *Id.*

Federal Rule of Civil Procedure 13(e) provides that "[a] claim which either matured or was acquired by the pleader after serving a pleading may, with the permission of the court, be presented as a counterclaim by supplemental pleading." FED. R. CIV. P. 13(e). As noted by another district court within this Circuit, at least one panel in the Fifth Circuit has indicated that the standard under Rule 13(e) is the same as that under Federal Rule of Civil Procedure 15(a). *Villas at Parkside Partners v. City of Farmers Branch*, 577 F.Supp.2d 880, 882 n.2 (N.D.Tex. 2008)(citing *Phillips Petroleum Co. v. Loucks*, 42 F.3d 641, 1994 WL 708633, at *5 n.14 (5th Cir. 1994)). Rule 15(a) allows a party to amend its pleading with leave of court and instructs that "leave shall be freely given when justice so requires." FED. R. CIV. P. 15(a). Courts have interpreted this rule "liberally, in line with the Federal Rules' overall goal of resolving disputes, insofar as possible, on the merits and in a single judicial proceeding." *Spartan Grain & Mill Co. v. Ayers*, 517 F.2d 214, 220 (5th Cir. 1975). A district court must possess a "substantial reason" for denying a motion for leave to amend pursuant to Rule 15(a); however, "leave to amend is by no means automatic." *Jones v. Robinson Prop. Group, L.P.*, 427 F.3d 987, 994 (5th Cir. 2005)(quoting *Lyn-Lea Travel Corp. v. Am. Airlines, Inc.*, 283 F.3d 282, 286 (5th Cir. 2002))(internal quotations omitted). Rather, "[d]ecisions concerning motions to amend are 'entrusted to the sound discretion of the district court.'" *Id.* (quoting *Quintanilla v. Tex. Television, Inc.*, 139 F.3d 494, 499 (5th Cir. 1998)). In exercising such discretion, the court may consider a "variety of factors," including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing

party by virtue of allowance of the amendment, and futility of the amendment." *Id.* (citing *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981)).

In opposing Lantz's motion for leave, Plaintiff makes no specific appeal to any of the Rule 15(a) factors as grounds for denying leave. (Doc. 32). Rather, Plaintiff claims that the motion should be denied because Lantz's proposed counterclaims "are not related to the pending issues [in this case], and are likely asserted in an attempt to keep the case alive…." (Doc. 32). Plaintiff provides no legal support for its contention that the counterclaims are unrelated to Plaintiff's declaratory judgment action, and the Court has found none. Although the resolution of the counterclaims may not be *dependent* upon a finding of coverage, such claims certainly relate to the coverage dispute at issue. Moreover, the Federal Rules provide that "[a] pleading may state as a counterclaim any claim against an opposing party not arising out of the transaction or occurrence that is the subject matter of the opposing party's claim." FED. R. CIV. P. 13(b). Given that the Court otherwise has diversity jurisdiction over the action, the Court will allow Lantz to assert the proposed counterclaims against Plaintiff.

## V.     Conclusion

For the foregoing reasons, it is hereby **ORDERED** that Plaintiff Allstate Texas Lloyds' Motion for Summary Judgment (Doc. 15) is hereby **GRANTED**. Accordingly, it is further **ORDERED** that Plaintiff Allstate is not obligated to defend or indemnify Defendant Stewart Lantz under Texas Homeowners Insurance Policy, policy number 936883045, for the claims made against him by Defendant Florian Pascual in the 389th Judicial District Court, Hidalgo County, Texas, under the cause number C-2670-05-H.

Furthermore, it is hereby **ORDERED** that Defendant Florian Pascual's Motion to Dismiss (Doc. 20) is hereby **DENIED**.

Finally, it is hereby **ORDERED** that Defendant Stewart Lantz's Motion for Leave to File Counterclaim (Doc. 31) is hereby **GRANTED**.

SO ORDERED this 23rd day of February, 2009, at McAllen, Texas.

_____
Randy Crane
United States District Judge